All right, will the attorneys on 18-1543 please approach. And please tell us who you are, who you represent, and how much time you'd like. My name is John English. I represent Peter Qualiza v. FLN. And I would ask for the full 20 minutes, but if I finish earlier, I'm happy to sit down and shut up. All right. I will tell you, Mr. English, that the three of us have read the briefs. We are very familiar with your arguments. And counsel, I'm sorry, you. My name is Richard Gilbaugh, attorney for the New Pelley's, William Nicolopulous, Dean Nicolopulous, and 2830 Harrison LLC. All right. And how much time would you like? I would say 15 minutes. All right. And Mr. English, whenever you're ready. Oh, and you can sit down and we'll take turns. We're both new at this. Again, I am John English. Please, the court. Again, I'm John English. I represent Peter Qualiza v. Appellant. In this case, the defendant, William Nicolopulous, exercised his power. We've been mispronouncing it for several weeks here. Well, counsel and I agree. We're calling it, too. It shows his acumen is here. He exercised the power of direction under a land trust to direct that a deed be issued to Defendant 2830 Harrison LLC. Trustee complied with that direction. Later, the trustee filed a lawsuit to rescind that deed. We know the facts. Okay. How do you think the court should have decided? I mean, not the decision itself, but how should the court have gone into deciding this decision? What does the court have to look at? What documents does the court have to consider? And under what standard? First of all, you're talking about the standard for? Not review. I'm talking about the trial court. Okay. What factors should the judge have been looking at? I think the judge should have looked at the key thing is what the terms and conditions of the land trust were at the time that William exercised the power of direction, and whether or not he had the authority to exercise the power of direction as he did. Right. But that's the issue. That's the issue. Let me ask my question is, how does the judge decide? What does the judge need to look at? Needs to look at the land trust. That's it. Need to look at the land trust agreement and at the amendment to the land trust agreement. Nothing else. He can certainly consider the conditions under which the amendment was made, which was following the divorce between William and Judy. So those would be the three. What about the MSA? I'm sorry? Marital Settlement Agreement? Well, that's incorporated into the... What in the marital settlement agreement would be relevant in making a decision on the land trust? Well, when we construe a document, we look at a trust, we look at the conditions under which it was exercised, and you could look to clear up any ambiguity. You could look at the terms and conditions of the marital separation agreement to see that the parties had divided up the interest in the marital residence. It was actually a land trust. I mean, the marital settlement separation agreement was treating this as a piece of real estate. It was really a land trust that held the real estate. But you look at that, they divided it up between Judy, who received a 75% interest as her sole and separate property, and William, who received a 25% as his sole and separate property. And then there were a robust series of releases by both parties. Now, there is a provision in the marital separation agreement that says that, quote, husband and wife own as joint tenants the former marital residence, close quote. That's in the appendix at page A-047, the appendix to Appellant's brief. Now, when I first read that provision, I thought they were referring to how they held title at when they were married. Now, I looked at that and saw, well, this is, one, it's not accurate, because they didn't hold title as joint tenants with rights of survivorship. And when we review the land trust agreement, we can see that. And then, two, if they were attempting to create a joint tenancy with rights of survivorship, they were not successful in doing so, because it didn't meet the qualifications to create a joint tenancy. At best, it was an attempt to create one. The parties clearly said, again, Judy's going to own 75 percent. William's going to own 25 percent. But they did not own equal undivided interests. So how could they create a land trust where they didn't have the unity of interest needed to create a land trust? But what they didn't amend and what the trial court focused on was the right of, the ability to direct. And that ability to direct in the trust is vested in William and Judy or the survivor thereof. And so the trial court said, this trust provision, which both parties affirmed, as part of the marital separation agreement, is meaningless unless it means what it says, that the survivor can direct the transfer of the interest in the trust. What the trial court did not focus on, and which, in my view, they should have, was the amendment that Judy and William made nine months or so after the divorce. And that's a very important document here. I think if we look at the terms and conditions of the original land trust, and the original land trust can be found in your appendix at page 028 through 029. And the amendment, which takes the form of an assignment, can be found at page A059. That's in, again, in the appendix attached to the capital lands brief. They create, Judy and William, while they were married, created a land trust. But the terms of the land trust were a bit unusual. The original trust provided, and I quote, beneficial interest in, colon, Judy A. Nicolopoulos. But then immediately following that is the following language. And if I may indulge to read it. Judy A. Nicolopoulos, together with William G. Nicolopoulos, or the survivor thereof, may sell, assign, transfer, or otherwise dispose of any part of the beneficial interest under this trust, and may use and consume the proceeds thereof. And they may also amend, alter, or revoke from time to time any provisions for successors and interest in the event of death. Now, we both, Appellant and Appellee, agree that rules that apply to trust construction. So we have to try to figure out what did they mean when they said this. Well, the trust says that Judy owned the entire beneficial interest. It didn't say they owned it as joint tenants with rights of survivorship. She owned the entire beneficial interest. So it says that even though, although she owned the entire beneficial interest, that she and William could deal with it. They could sell it. They could use it. They could withdraw it. So, in effect, the land trust provides that both have powers over Judy's entire beneficial interest. And that if William survives Judy, these same rights would pass to William. That's what the original document says. It does not create a joint tenancy with rights of survivorship. One may argue that the simple reference to the word survivor in the provision I just read would create a formal joint tenancy under Section 2 of the Joint Tenancy Act. But it does not. You might be in a better position if that assignment amended that specific survivor language. And it did not. Well, it, yes it did. But it, by implication. It let it in and then amended it? Let me, let's address the, excuse me, let's address the amendment to the land trust in response to your question or comment. When they were divorced, they signed the assignment. And Judy, who owned the entire beneficial interest, remember, she assigned 25% of the beneficial interest in the land trust to William. So now, William owns 25%. Judy owns 25, 75% of the beneficial interest in the land trust. And you are correct, Your Honor, that the assignment did not specifically address that provision. But it addressed it by clear implication. It, one, it was setting up 25% to be owned by one party, 75% to be owned by the other party. How could you then interpret a document to say, well, the party that has 25% can use and sell and deal with Judy's 75% interest? Because he was the survivor. This is while they're alive, right? While they're alive. So it would have, by implication, affected that provision. Just as in the Dorman case, there was a provision in the land trust that said that all of the beneficiaries could exercise a power of appointment. And in Dorman, the grantor had issued an assignment that said, the two of you have a power of direction, but I still have a power of direction. And the plaintiffs in Dorman said, well, you didn't amend that particular provision. So we can exercise the power of direction any way we want to. And the court said, no. It was clear, and I don't think the court used the words by implication, but the court said it's clear that this was not intended to be who could exercise the power of direction. But that's not the way Judge Mitchell interpreted Dorman, because he relied specifically on both Dorman and Velazquez in his rather pithy order, correct? He did, and we respectfully disagree with his view of Dorman. I think Dorman, I think when we look at the assignment, the assignment said 25% to William. It did not say, with rights of survivorship, it did not say as a joint tenant. So it did not comply with Section 2 of the Joint Tenancy Act. The problem is this couple, even though they had been divorced and had allocated the interest in this land trust, continued to hold the property in trust long after their divorce. So if they continued to do that, they could have created a tenancy in common. Judy has 75%. William has 25%. Each can alienate their interest freely. You know, that would accomplish it. But they chose to leave it in the trust governed by this trust document, which has this language about what the survivor can do. But that language was amended by the assignment. The assignment, in fact, did do away with the rights of survivorship. It, by clear implication, amended the language in the original trust document that follows the statement that Judy owned the entire beneficial interest. Clear implication? Yes, Your Honor. Because again, if, let's assume before death, let's assume that they're alive. If someone, if Judy or tried to use William's 25%, I don't think a court would allow that to happen, because they each received their respective interest as their sole and separate property. So that, if they wanted to maintain the joint tenancy, then they should have done so in the assignment. Well, there is no joint tenancy. There never was a joint tenancy. Well, that's our view. But, because, well, she only 100%. Well, correct. So, I mean, that sentence is, it's wrong. It was never in joint tenancy for 100%. I didn't see anything. Again, when they set up the trust, you can say that it did not have, they were not joint tenants. They did not establish a joint tenancy, either in the original trust, even though they used the word survivor. It was not, you have to construe what the trust document said. And so we looked at what the trust document said before it was amended. Once it was amended, then, excuse me, once it was amended, all that went away. Did, Judge Mitchell did not make a determination, a finding with regard to that issue of joint tenancy? Or did he? He looked at the marital settlement agreement in the statement where they said that the marital residence is owned in joint tenancy. I forgot the exact words. But then, and then went on to say we didn't address, that nothing addressed specifically the joint tenancy. He didn't make a decision on that. He didn't make a finding on that. The judge. Would you say the judge made a finding on joint tenancy or not? It sounded to me like he did, the way I construed the order. That he did, and he found there was a joint tenancy. Is that what you're saying? No, I'm saying if he did, that that's an error. Well, in the final paragraph of his order, he referred to the language of the 1985 assignment, where it said power of direction to be exercised jointly by Judy and William. Right? Now, that's the power of direction after the amendment. And the power of direction had a specific purpose. It said they would exercise it jointly. It didn't say the survivor would exercise it. It said they would exercise it jointly. Again, the failure to use the word survivor, indicate that that creates a survivorship, I think is fatal to William's unilateral exercise, the power of direction after the divorce. But what's more important, the specific provisions in the assignment, where it says that the power of direction should be exercised jointly by Judy and, I'm going to paraphrase, Judy and William. And all proceeds shall be divided 75% to Judy A. Nicolopoulos, and 25% to William G. Nicolopoulos, pursuant to the judgment of dissolution. So would Judy's heirs still have a claim in the event the property is sold to 75% of the proceeds? Yes. Yes. All right. I think I'm out of time. We'll give you a few minutes for rebuttal, and if you want to finish up. Well, I think we've really addressed the key thing here is what did the land trust say? How do you interpret the land trust? At the time, William exercised his power of direction. And then if that doesn't convince the court that it was an improper exercise, the power of direction, then we need to look at what the marital settlement agreement says. And we both, I think we've had a nice discussion about what the marital settlement agreement says and what it doesn't say. The only thing I didn't address is whether Velasquez applies to this case or not. And I'm happy to address that quickly, or I can wait until. I think you're brief handled your position on that. Okay. We'll let you address it in rebuttal. I'll say that. All right. Thank you. Thank you. Mr. Gilbaugh? Good morning again, Your Honors. So I believe we're in agreement that the terms of the land trust control you. They're paramount. They determine the rights of the parties, both in the beneficial interest and the power of direction. And this assignment document is part of the land trust because it affects those rights and it's signed by both of the parties. Do you agree that Judy's heirs have a claim to 75% of the proceeds if the property is ever sold? No, we do not agree on that. Okay, why not? The reason being because the assignment signed after the divorce didn't address the survivorship arrangement, as the trial court called it. It didn't change it. And it reaffirmed that they jointly hold the power of direction because it said both shall jointly exercise the power of direction. But the power of direction and the interest in the proceeds of the sale seem to me to be two different things. Somebody can have a power of direction, but if there is a preexisting claim under the marital separation agreement to a share of the proceeds, how does the power of direction extinguish that? Well, I guess it really does have to do with the beneficial interest. Your question about the 75-25 split, it really has to do with the beneficial interest and not the power of direction. And I think the assignment is silent on that. It's silent on what happens when one of the beneficial holders passes away. That's why we're here. The land trust provides what happens in that instance, and that it passes to the survivor thereof. Well, but maybe it doesn't, and that's why we're here. The assignment says nothing about survivorship, and Mr. English said that that is fatal to your argument, that the language says nothing about survivorship in the assignment. Well, I think it's the strength of the appellee's argument because it is silent. Because it is silent, it didn't purport to change that survivorship. So these people are getting divorced, and they're separating everything. And if you read the settlement agreement of their divorce, their judgment, they're trying to separate themselves from everything, right? And she's going to pay 100% taxes, mortgage, upkeep. He has no responsibility whatsoever for anything going forward. Is that correct? Well, I'm not sure. I mean, there were provisions about the costs of the property going forward after the divorce, and how there would be a portion. I thought it said 100, she pays, he was held harmless. Basically, yes. Okay, so she's paying 100%. So she's paying the whole thing, and you're saying that as a result of that, he gets 100% because when they're trying to divorce, they're trying to separate themselves, and it's ambiguous in the assignment, is what you're saying, because we have a dispute. It's nothing stated there, so you're going back to the original language in 72, right? Right, because of the assignment. The assignment, but that's when they were married. And now they're divorcing, trying to separate from one another. And there's a lot of language which happens if they want to sell the property, if she remarries, and all that. So it was obvious they were trying to separate themselves completely and take care of this once and for all. So how can we not look at the divorce agreement, which intended to separate them permanently and to give a right of survivorship would be just as if they were married again. I mean, it doesn't seem to follow. Well, we have to look at this divorce agreement. As the trial court pointed out, the fact of the divorce in and of itself doesn't extinguish property rights that existed. And here, these rights were established by this 1972 land trust. But it was different in 1985, the key date, right? They get divorced. So don't we have to take account of the divorce? Well, that's why they have the assignment, right? Yes, we do. And I think that's why we looked at the Velazquez test. The court in the Velazquez case was trying to set out a clear rule to apply in these situations. Well, it wasn't so clear because you say if it's not 100%, the rule doesn't apply. I don't understand that. Right, well- Why does that make a difference? Because the agreement specifically awarded portions of this property in William. And it didn't address the survivorship provision. Again, like the assignment- So William would only be entitled to 25% if they're alive, but if she dies, he gets 100%. That's what you're saying, right? Right, yes. And why does that make any sense when you read their divorce papers in light of the assignment together? I don't understand why he would, the only time he gets 100% is if she pre-deceases. Well, I think the point of the Velazquez case and the cases it cites, including the Myers cases, is to find out whether this divorce agreement had a clear expression of surrender of an interest. That's the language used in the Myers cases, a surrender of an interest. And William did not surrender his interest in this property because he actually retained an interest going forward. He had no interest. He only had an interest in survivorship to start with, right? In 72. That's all he had. Well, I'm not sure that that's the case because the- In 72? The land trust agreement says it does have that language where it says Judy Nicolopoulos alone. But then it goes on to say that William and Judy hold jointly this, I think what it's describing is a beneficial interest. It's very specific. That's what a beneficial interest is. It can use the proceeds, can consume the proceeds. That's the beneficial interest. And I think it's more specific even than this single sentence that says Judy alone. It's very, I think it's very complete in saying that this beneficial interest is jointly held. So I- Well, it doesn't say that. The assignment changes it because the assignment makes it very clear that he only has 25% of the entire beneficial interest. That's what it said. So if that's your argument, that definitely was changed, right? Answer my question. Was that definitely changed because 25% was given him the beneficial interest? Well, there's no question that it was apportioned differently than how it was previously apportioned. The question is what happens to the right of survivorship that's stated in the original- Well, why would he get a survivorship of 100% when during their lives it's 25%? When, you know, the whole idea of the agreement, it says in the marital settlement, is to get the parties separated and forever separate their property and decide all these issues. And they spent two pages of which we only have, we don't have page 16, unfortunately. And apparently that all has to do with this property. But just on page 15, it shows what the parties are talking about. It's very specific. Well, that's why we have these tests to determine if something is waived. The survivorship was not discussed in this marital separation agreement. And if something exists out there and it's not addressed in the separation agreement, then it remains in place. Well, it was addressed in that they're separating themselves. He only is entitled to 25% at the end. Well, they didn't separate themselves in relation to this property. And I think that's another factual fact that the court should consider. And I think it's very similar to this case of Dudick, which I cited in the briefs, which the same situation, a divorced couple had real estate in the land trust. Their separation agreement recited that fact, that it was held in a land trust, and said it would be held in a land trust going forward. And the court said in that situation, it's not our place to divide up the proceeds, even though that separation agreement had given a 50-50 split. It said in that situation, where each party clearly evidences an intention to keep the property in a joint tenancy, then it's not our place to go against that intention. But that's not the intention here. It's obvious from the fact that they got divorced and everything's being split. And instead of 100% of the beneficial interest, she ends up with 75%. And instead of them jointly paying whatever the expenses were, she's 100% responsible for everything going forward. Well, I think it is similar in that this marital separation agreement did note that fact, as I pointed out, didn't say anything that it would be removed from this joint arrangement, and said that actually it should be sold by 1992, when the couple's youngest child reached the age of 18. But that didn't happen. And it also said that it would be sold when Judy remarried. That didn't happen, even though both of those facts... Well, they can waive that. That's waivable. Well, I think it goes to this survivorship arrangement. This was in place the whole time. It was in place the whole time in this land trust, from the beginning. Each party had the right and the ability to change that arrangement going forward. The separation agreement, I believe, didn't address the survivorship provision. It said that the parties would eventually sell the property, but they didn't. What about your language in paragraph C, part C of paragraph 9? Husbands shall receive as his sole and separate property the following items of real and personal property. Twenty-five percent of the interest in the equity in the marital residence as is more fully set forth herein below. That's true. I would again go back to the point that the trial court made that property rights that exist under documents such as a land trust, they're not exterminated or extinguished just because of the divorce. That's why the divorce agreement has to specifically say that certain rights are being waived, and that's the Velazquez test. That's the test that has to be applied. I don't think that the Velazquez test is met in this case. Well, you say, first of all, it has to be 100 percent, so we don't even get past the first factor in Velazquez, is that right? Correct. Let's say we don't agree with that. Let's say we don't agree with that part. What about the second? Well, the second is, so the question in the second prong is we should ask whether the waiver provision in the agreement specifically states that the parties are waiving any expectancy or beneficial interest in that asset. I think the answer is no, because the divorce agreement specifically awards William an interest in the land trust property. I know it goes back to, it's a similar reason why the first prong is not met, but it's absolutely true. William keeps an interest in this property, and the cases all talk about whether the spouse surrenders that interest, whether there's a clear expression of the desire to surrender that interest. And that's not existing here. And I think the trial court properly dismissed this counterclaim, as well as the underlying claim, which was filed by Chicago Title, but is not part of this appeal. But the trial court properly applied these cases. The Velazquez case, the Dudek case, the Elliott case is an example of how these interests pass outside of a probated state when we have a situation like this with a joint tenant and a right of survivorship. We have to go back to the land trust documents. Those are really the paramount consideration. And they weren't changed by the assignment. They weren't changed by the marital separation agreement. And we think the court should affirm the trial court's dismissal. All right. Mr. Galbaugh, any other points you'd like to make? No, I don't believe so. All right. Thank you. Thank you. Mr. English. Very quickly, I think a lot of the things in the discussion that just occurred we had in our discussion. I would just like to again go back to the marriage of Dudek. And again, the key difference between that case and this case is that prior to the divorce in Dudek, the husband and wife clearly had a joint tenancy with a right of survivorship. They didn't have this confused land trust setup that we have in this case. And all the agreements said, marital settlement agreements said, okay, you sell the property, husband gets a couple of thousand dollars off the top and then everything else is divided 50-50. So they had a land trust. Strike that. They had a joint tenancy in the beginning. They said, okay, we clearly intend to keep it as a joint tenancy. But unlike the case here, that settlement agreement said nothing about dividing the interest between the parties. It said we're going to continue to own it as joint tenants. Whereas here it said we're going to continue to own it 25% for William and 75% for Judy. And then lastly, going back to the amendment, which is a very important document in this case. Who drafted that, by the way? I do not know, Your Honor. Okay. It did, if there was any joint tenancy or rights of survivorship, that amendment extinguished those rights because that amendment did not give those rights to William. If there are no further questions, I'm prepared to sit down. Okay. Thank you. I do ask that you reverse and remand. We gather. Thank you. All right. Thank you for your arguments here this morning and for your briefs. We will take the case under advisement and stand in recess briefly.